168 So.2d 845 (1964)
Mrs. Myrtice DARE et al., Plaintiffs-Appellees,
v.
L. L. MYRICK, Defendant-Appellant.
No. 10267.
Court of Appeal of Louisiana, Second Circuit.
October 30, 1964.
Rehearing Denied December 1, 1964.
*846 Wilson, Abramson, Maroun & Kaplan, Shreveport, and Robert H. Wimberly, Arcadia, for defendant-appellant.
Campbell, Campbell & Marvin, Minden, for Mrs. Myrtice Myrick Dare and others, plaintiffs-appellees.
Before HARDY, AYRES and BOLIN, JJ.
AYRES, Judge.
Plaintiffs, ten in number, issue of the marriage of Albert M. Myrick and Mrs. Irene Caskey Myrick, as the sole and only heirs of their father who died intestate November 25, 1950, brought this action against the defendant, L. L. Myrick, an uncle, (1) to annul a former judgment rendered in an action between them and subsequently affirmed on appeal to the Supreme Court (Dare v. Myrick, 226 La. 732, 77 So.2d 21) on the ground that the judgment was procured as a result of fraud, deceit, and ill practices on the part of the defendant; (2) to annul as a simulation an instrument executed by their father April 29, 1949, purporting to convey to the defendant all his property, real and personal; (3) to recover judgment for certain income received by the defendant from the property purportedly conveyed; and (4) to require defendant to account for the personal property purportedly conveyed to him and for the fruits and revenues received from the real estate.
From a decree annulling the judgment as well as the purported conveyance, awarding the plaintiffs judgment for the sums of $2,483.20 and $330.00, and requiring defendant to account for the personal property received and the fruits and revenues derived from the real estate, subject to a credit of $467.50, or, in default of such an accounting, condemning the defendant for the additional sum of $2,500.00, the defendant has suspensively appealed. Plaintiffs, in answer to the appeal, have prayed for judgment in the further sum of $1,000.00 and for disallowance of the aforesaid credit, and, otherwise, that the judgment be affirmed.
Albert M. Myrick and his wife were, on April 29, 1949, judicially separated by a decree of the Second Judicial District Court in and for Bienville Parish, Louisiana. On the same day, by notarial act, Myrick purported to convey to his brother, L. L. Myrick, the defendant herein, all the property owned by him, both real and personal, consisting of 169 acres of land on which the family residence was located, together with all farm equipmenta tractor and implements; a mower, rake, and hay baler; plows; tools; harness; a wagon; a syrup mill and evaporator; three head of livestock; 20 head of cattle, less two cows and calves reserved for his own use; 13 goats; and 75 hogsfor a recited consideration of $4,000.00 cash.
The former action was filed December 28, 1950, by the deceased's three major children and by his surviving widow as natural tutrix of the seven minor children. There it was contended that the purported sale was a simulation executed pursuant to a fraudulent conspiracy between the two brothers to place the property beyond any claim for alimony and support by the wife and children.
In answer to interrogatories propounded on the filing of the petition, and in his *847 testimony on the trial of the case, defendant testified that the purported sale was real and genuine; that the real consideration of the sale was $4,467.50, represented by his check of $4,000.00, drawn on the First National Bank in Arcadia, payable to and endorsed and cashed by Albert M. Myrick, and by two checks aggregating $467.50 given in payment of his brother's attorney's fees incurred in connection with the aforesaid separation proceedings. Defendant further testified that the purchase price was actually paid and was never returned to him. In corroboration of this testimony, statements were submitted of his accounts from four banks. These, he testified, were the only banks with which he did business.
Notwithstanding the fact that the testimony established that Albert M. Myrick remained in possession of the property purportedly sold, the court held in the former action that the evidence was insufficient to establish that the consideration recited in the deed was not paid or that the alleged transfer was a simulation. In this connection, the Supreme Court observed:
"It is true, according to Article 2480 of the LSA-Civil Code, that in cases where a seller remains in possession of the thing sold, the sale is presumed to be simulated and in the absence of proof to the contrary will be held to be simulated. However, defendant has succeeded in proving that the documents relating to the sale, i. e., the deed and the check representing the price paid, were genuine, and having overcome the presumption the burden rested on the plaintiffs to prove the contrary and that the sale was simulated." (226 La. 732, 77 So.2d 21.)
The applicable rule of law is stated in LSA-C.C.P. Art. 2004:
"A final judgment obtained by fraud or ill practices may be annulled.
"An action to annul a judgment on these grounds must be brought within one year of the discovery by the plaintiff in the nullity action of the fraud or ill practices."
Moreover, perjury by a litigant in whose favor a judgment was rendered has been held to constitute fraud justifying an annulment of the judgment. Adkins' Heirs v. Crawford, Jenkins & Booth, 200 La. 561, 8 So.2d 539 (1942); Christie v. Patorno, 8 La.App. 603 (Orleans 1928); Clark v. Delta Tank Mfg. Co., 28 So.2d 62, La. App., 1st Cir. 1946.
Thus, a judgment may be annulled where it appears that it was obtained by ill practices on the part of a party in whose favor it was rendered. Any improper practice or procedure which enables a party to obtain a judgment has been held to come within this rule. Each case must be considered from an equitable viewpoint to ascertain whether it would be inequitable or unconscionable, in view of the practice or procedure which enabled the party to obtain such judgment, to allow is to stand. Lacoste v. Robert, 11 La.Ann. 33 (1856); City of New Orleans v. Le Bourgeois, 50 La.Ann. 591, 23 So. 542 (1898); Tarver v. Quinn, 149 La. 368, 89 So. 216 (1921); Succession of Gilmore, 157 La. 130, 102 So. 94 (1924); Walsh v. Walsh, 215 La. 1099, 42 So.2d 860 (1949); Alonso v. Bowers, 222 La. 1093, 64 So.2d 443 (1953); Coltraro v. Chotin, 1 La.App. 628 (Orleans 1925).
The judgment in the former action, favorable to defendant, was predicated, as shown by the foregoing quotation from the opinion of the Supreme Court, upon the showing made by the defendant that he actually paid the price for the property recited in the deed. In view of the facts established in the present record, we must now determine whether defendant actually made such payment. The record discloses, among other pertinent facts, that after the purported sale the *848 vendor remained in possession of the property, exercising dominion and ownership over it.
Other material facts established by the present record may be briefly reviewed. The defendant, who resided in Orange, Texas, drove his brother to Arcadia on the occasion of the rendition of the judgment of separation. On that occasion, the purported sale was executed. Defendant drew his check for the recited cash consideration, payable to his brother, who immediately cashed the same at the First National Bank in Arcadia, the bank on which the check was drawn. Thereafter, the brothers returned to their mother's home in Ringgold, where Albert M. Myrick was then making his home. En route, defendant's wife, who had visited with friends during the day, was picked up and continued with them to Ringgold.
During this last stage of the return journey, while the three were together, defendant explained to his wife the nature of the transaction between him and his brother so that she would understand in the event anything should happen to him. It was explained that Albert M. Myrick continued as owner of the property, notwithstanding that the title was placed in defendant's name. This, she was informed, was done for the purpose of shielding the property from any claim for support or alimony which might be made on behalf of Mrs. Albert M. Myrick and the children. Funds in defendant's possession, proceeds of defendant's check, were explained to be the property of defendant and his wife. The defendant, so testified his wife, also had in his possession an additional $500.00 given him by his brother, who subsequently supplemented the amount by a like sum, bringing the total cash in defendant's possession to $5,000.00, of which, as explained, $1,000.00 was Albert M. Myrick's and $4,000.00, the defendant's.
Notwithstanding that defendant had accounts not only with the First National Bank in Arcadia but with the Bank of Ringgold and the Bank of Coushatta, no deposit of this $5,000.00 was made until June 25, 1949, when defendant drove from his temporary residence in Texas to De Ridder, Louisiana, where he had never resided or done business, but where he deposited the funds in the First National Bank of that city. The defendant was fully aware, during that time, of his brother's hatred and bitterness toward his wife and of his determination not to support her or his children.
In the first of these actions, through interrogatories propounded to him and by interrogation during the trial, defendant was asked to disclose the names of all the banks in which he had accounts or with which he did business, and to disclose the nature of those accounts. In addition to the First National Bank in Arcadia, the Bank of Ringgold, and the Bank of Coushatta, defendant named only the Bossier Bank and Trust Co., with which defendant had opened an account when he returned to Bossier City to reside in December, 1949. Defendant emphatically denied that he had any other account or that he had made any deposit in any other bank.
Defendant's disclaimer of ownership of $4,000.00 of the funds placed on deposit in the De Ridder bank is disproved by his actions and by the record. Defendant contended that the funds delivered to him in the form of currency were those of one E. L. Vice, whom he had first known in 1940, and that the funds were placed with him for the purchase of machinery because of defendant's entitlement to preferential treatment as a veteran. The machinery not having been purchased, defendant drove to De Ridder August 10, 1951, and withdrew his deposit in cash. For two or three weeks thereafter, defendant carried these funds in his pocket, so he claimed, before returning them to Vice.
The record, however, is most unconvincing that Vice had $5,000.00 to place with defendant. His business operations were not conducive to the accumulation of very *849 much cash. Moreover, mortgages on his assets and judgments against him tended to establish the lack of such funds. It is inconceivable that Vice, as he claimed, accumulated this amount, little by little, over the years, never depositing it in a bank but always carrying it with himnever in a billfold, but loose in his pocket or with a band around it.
Nor does the record establish what Vice did with this cash after its supposed return to him. He does not claim to have deposited it in any bank. Vice's records were said to have been burned. Defendant's records were said to have been scattered and destroyed in a robbery of his premises in Texarkana where he now resides.
The defendant insists that the testimony of his former wife, particularly with reference to his possession of $4,000.00 in cash on the return journey from Arcadia to his mother's home, allegedly conceived through her prejudice, hatred, and ill will, was false. We find no substantial basis for concluding that the trial court manifestly erred in believing the witness' testimony. However, we may point out that, if this witness' testimony be entirely disregarded, the other facts and circumstances established in the record, and to which we have referred, are sufficient to support the conclusions which we have reached.
The conclusion is inescapable that the purpose of defendant's deposit of the funds in the De Ridder bank was to conceal such funds so that their return to him would not evidence the fact that the purchase price allegedly paid his brother had been returned to him, and that his pretended purchase from his brother was a simulation. Such concealment was, in our opinion, an intentional one and made to deceive and defraud. Consequently, the court finds that defendant's testimony, to the effect that the sale from his brother was real and genuine and that the consideration was never returned to him, was false. The concealment of the return of the purchase price and of its subsequent deposit in an undisclosed bank, coupled with defendant's falsification of testimony concerning it, constitutes fraud, deceit, and ill practices warranting the annulment of the judgment as inequitable and unconscionable.
The facts as to the return of the alleged purchase price money to defendant and his concealment thereof, and of defendant's falsification concerning them, became known to plaintiffs during December, 1962, about two months before this action was instituted.
The facts to which we have referred and the conclusions reached with reference to the nullity of the former judgment are particularly applicable to the issues presented on the question of the simulation of the purported sale from Albert M. Myrick to the defendant, L. L. Myrick.
Simulations may ordinarily, because of their nature, be established only by indirect or circumstantial evidence. While the burden of proof generally rests upon those who attack transactions as simulated, yet, if they produce evidence of circumstances which create highly reasonable doubts as to the honesty and reality of the transactions, prima-facie cases of simulations are deemed to have been established, and the burden of proof is thereby shifted to the opposition to show that such transactions are genuine. Smith v. Smith, 239 La. 688, 119 So.2d 827 (1960); Howard v. Howard, 96 So.2d 345, La.App., 2d Cir. 1957; Broussard v. Broussard, 132 So.2d 85, La.App., 3d Cir. 1961; Johnston v. Bearden, 127 So.2d 319, La.App., 2d Cir. 1961 (writs denied).
The existence of suspicious circumstances, among which are to be considered the continued possession by the vendor, the close relationship of the parties to a sale, and the failure to satisfactorily explain the payment of the purchase price, are entitled to great weight, and the existence thereof may be accepted as evidence of the simulated character of the sale. Peyton v. Roth, 149 La. 147, 88 So. 773 (1921); Agricultural *850 Supply Co. v. Lavigne, 179 La. 1030, 155 So. 764 (1934); Dorsey v. Ashford, 200 So. 176, La.App., Orleans 1941; Johnston v. Bearden, supra.
Thus, under LSA-C.C. Art. 2480, where a person remains in possession of property that he sells, there is a presumption that the sale is simulated. This presumption is strengthened if the sale is made to a close relation of the seller, particularly where the purchaser is unable to satisfactorily explain the payment of the price. The record abundantly supports the establishment of these facts which create highly reasonable doubts as to the honesty and reality of the transaction herein concerned. Defendant's evidence, as heretofore pointed out, does not overcome a prima-facie case established by plaintiffs.
Defendant, however, makes no assignment of error as to the monetary award nor as to the accounting ordered by the court. In regard to the accounting, we may nevertheless observe that we have not been referred to any rule, nor do we know of any, that would authorize a monetary award in lieu of an accounting. Therefore, the award of $2,500.00, predicated on defendant's possible failure in the future to account, is error and must be deleted from the judgment. Plaintiffs, of course, have their remedy to enforce compliance with the order to account through appropriate proceedings.
Nor do we find, from our review of the record, any substantial basis for increasing the monetary award prayed for in an answer to the appeal. The manifest-error rule, we think, may be properly applied in this instance.
Therefore, for the reasons assigned, the judgment appealed is amended and recast to read as follows:
It is therefore Ordered, Adjudged, and Decreed that that certain judgment of the Second Judicial District Court in and for Bienville Parish, Louisiana, dated June 30, 1953, in that certain cause entitled "Myrtis Dare et al v. L. L. Myrick," and bearing Docket No. 14153, as affirmed by the Supreme Court of Louisiana under date of December 13, 1954, in an appeal bearing Docket No. 14585, and as reported in 226 La. 732, 77 So.2d 21, be, and the same is hereby, decreed to be null and void, and it is, accordingly, annulled, avoided, reversed, and set aside.
It is further Ordered, Adjudged, and Decreed that that certain purported sale from Albert M. Myrick to the defendant, L. L. Myrick, as per deed and bill of sale dated April 29, 1949, recorded in Book 179, page 506, of the Conveyance Records of Bienville Parish, Louisiana, wherein the former purported to convey to the latter, among other property, the following, to wit:
NE ¼ and the N ½ of the NE ¼ of the SW ¼, Sec. 2, T. 15 N., R. 8 W., Louisiana meridian, together with the improvements thereon and appurtenances thereunto belonging, situated in Bienville Parish, Louisiana, less and except portions thereof sold to Mrs. Irene Caskey Myrick,
be, and the same is hereby, decreed to be a simulation and, as such, null and void and without force and effect, and that, as such, it be canceled and erased from the aforesaid records.
It is further Ordered, Adjudged, and Decreed there be judgment herein in favor of plaintiffs, Mrs. Myrtice Myrick Dare, Mrs. Mary Myrick Saale, Mrs. Bobbie Myrick Hataway, Mrs. Laura Ann Myrick Fontenot, James C. Myrick, Lawson L. Myrick, Justin Harold Myrick, Walter Thomas Myrick, Roger Marion Myrick, and Albert M. Myrick, Jr., and against the defendant, L. L. Myrick, recognizing and decreeing plaintiffs to be the owners of the abovedescribed real estate and that, as such owners, they are hereby placed in possession theerof, subject to (1) those servitudes or easements granted by the defendant, L. L. Myrick, to the Bienville Parish Police Jury under date of July 13, 1956, and as recorded in Book 214 at pages 230 and 234, respectively, of the Conveyance Records of Bienville *851 Parish, Louisiana, as well as (2) all alienations of personal property and standing timber made by the defendant to third persons prior to February 25, 1963, the date of the institution of this action.
It is further Ordered, Adjudged, and Decreed there be judgment in favor of plaintiffs and against the defendant as follows: (1) For the sum of $2,483.20, with legal interest thereon from September 14, 1956, until paid; and (2) ordering and directing defendant to render to plaintiffs, within 30 days from the finality of this judgment, a true and exact account of the proceeds of the sale of the personal property described in the aforesaid act of sale, and of the revenues, fruits, and income derived or received from or on account of the realty hereinabove described, subject to credits in the sums of $250.00 and $217.50 expended as attorney's fees for the account of Albert M. Myrick; and
It is further Ordered, Adjudged, and Decreed that, as thus amended and recast, the judgment appealed be, and it is hereby, affirmed at defendant-appellant's cost.
Amended and affirmed.