FORET, Judge.
Mrs. Ethel R. Skye died in Rapides Parish, Louisiana, May 16, 1974. Her succession was opened on May 30, 1974, and her will was probated and, in accordance with its terms, William Skye was appointed testamentary executor. On November 6, 1975, a petition for homologation of the final account was filed by the executor. On March 8, 1976, a judgment was entered homologating the executor’s final account, along with a judgment of possession. Mary Skye Maycock, daughter of the decedent, filed this suit in an attempt to annul the final account judgment and the judgment of possession alleging that the testamentary executor, William Skye, had committed “fraud or ill practices”. The trial court held that William Skye had not committed fraud or ill practices and refused to annul the final account or re-open the succession.
The facts show that on November 6,1975, William Skye, testamentary executor, filed a petition for homologation of the final account. All of the heirs were served -by certified mail with notice that if no opposition was filed within ten days there would be a judgment homologating the final account. Prior to the expiration of the ten-day period, Charles Yeager, an Alexandria attorney, contacted William Skye on behalf of Mary Skye Maycock, who was then residing in Virginia, and requested a delay in homologation of the final account in order to more fully investigate the succession proceeding. Mr. Skye not only agreed to this delay, but specifically requested that Yeager refrain from filing an opposition so that they could discuss the matter and possibly reach an amicable settlement. During the next four months there were several meetings between William Skye and Mr. Yeager.
On Friday, March 5, Yeager informed Skye that he could no longer represent Mrs. Maycock, because he may have to be a witness in the case because of certain conversations which he had with Skye, and that a letter was in the mail to Skye to this effect. He further informed Skye that Stephen W. Harris, attorney, would take over the representation of Mrs. Maycock. On the morning of March 8, 1976, Yeager’s letter was received by Skye. At 8:30 A.M. on March 8, Skye obtained a certificate of no opposition to the final account. That same morning, Skye had the judgment of homologation of the final account, and a judgment of possession signed. That same afternoon, at 4:19 P.M. Stephen W. Harris, as attorney for Mrs. Maycock, filed an opposition to the homologation of the final account. Later, a third attorney representing Mrs. Maycock filed this suit to nullify the judgment homologating the final account, and to re-open the succession.
On October 28, 1976, the defendants filed peremptory exceptions of res judicata and no cause and no right of action. These exceptions were argued and briefed, and the trial court, for reasons assigned, overruled the exceptions, and a judgment in accordance with this ruling was signed on January 7,1977. On February 23, 1977, the defendants filed an answer to the petition of the plaintiff and a reconventional demand for collation; plaintiff filed answer to the reconventional demand.
In due course this matter was consolidated for trial with the Succession of Samuel Van Skye, 364 So.2d 1361, No. 6643 on the docket of this Court, and was tried before a different trial court judge. On October 24, 1977, the trial court, for written reasons assigned, held that the judgment homolo-gating the final account was res judicata and rejected plaintiff’s petition to re-open the succession without discussing any of the objections raised by the plaintiff to the final account. Judgment in accordance with the court’s opinion was signed on October 31, 1977. The plaintiff made timely application for devolutive appeal.
Applicable statutes, or portions thereof, involving the dispute herein are as follows:
*1359 Code of Civil Procedure Article 2001 provides:
“The nullity of a final judgment may be demanded for vices of either form or substance, as provided in Articles 2002 through 2006.”
Code of Civil Procedure Article 2004 provides:
“A final judgment obtained by fraud or ill practices may be annulled . .
Code of Civil Procedure Article 3337 provides:
“A judgment homologating any account other than a final account shall be prima facie evidence of the correctness of the account.
“A judgment homologating a final account has the same effect as a final judgment in an ordinary action.”
Code of Civil Procedure Article 3191 provides in pertinent part:
“A succession representative is a fiduciary with respect to the succession, and shall have the duty of collecting, preserving, and managing the property of the succession in accordance with law. He shall act at all times as a prudent administrator, and shall be personally responsible for all damages resulting from his failure so to act.”
The trial court in this matter concluded that William Skye had not committed “fraud or ill practices”. We agree with the trial court that no fraud was practiced. However, we cannot agree that he did not engage in “ill practices” as that term has been defined by the Louisiana jurisprudence. In the case of Leidig v. Leidig, 187 So.2d 201 (La.App. 3 Cir. 1966), the Court considered the action of nullity by a wife to set aside the judgment of divorce on the grounds of fraud and ill practices where a curator had been appointed to represent her, but the curator had not been given an up-to-date address by the husband who filed the divorce suit. In annulling the judgment of divorce, the court said:
“Under LSA-C.C.P. Article 2004, an ill practice justifying annulment of a judgment encompasses situations where the circumstances under which the judgment is rendered show the deprivation of the legal rights of the litigant who seeks relief, if the enforcement of the judgment would be uneonscientious and inequitable, even though no actual fraud or intentional wrong is shown in the procurement of the judgment. Official Revision Comment (b); St. Mary v. St. Mary, La.App. 3rd Cir. 175 So.2d 893, and decisions therein discussed. The jurisprudence has considered conduct which unfairly prevents the opposing party from having his day in court to urge his defenses is an ill practice justifying annulment of a judgment so obtained. Alonzo v. Bowers, 222 La. 1093, 64 So.2d 443; Hall v. Hall La.App. 2nd Cir. 127 So.2d 347.”
In Alleman v. Guillot, 225 So.2d 607 (La.App. 1 Cir. 1969), the court stated:
The applicable rule is that fraud which justifies annulment of a judgment is not confined to conduct which is fraudulent in the strict sense of the term. The provisions of LSA-C.C.P. 2004 are not limited to cases of actual fraud or intentional wrongdoing but encompasses those situations wherein judgment is obtained through some improper practice or procedure which operates, even innocently, to deprive the party cast of some legal right, and where enforcement of the judgment would be uneonscientious and inequitable. St. Mary v. St. Mary, La.App., 175 So.2d 893, and authorities therein cited.
Each such case must be considered from the viewpoint of whether under its own peculiar circumstances, it would be inequitable or unconscionable to permit the judgment to stand considering the procedure or practice employed therein. Dare v. Myrick, La.App., 168 So.2d 845, and cases therein cited.[1]
In Succession of Gilmore, 157 La. 130, 102 So. 94 (1924) the following language is found:
*1360 “It is true that said petition does not charge “fraud” or the ill practices specifically enumerated in the article of the Code of Practice above cited. The remedy given by said article to annul judgments, however, is not restrictive. The courts of this state will not hesitate to afford relief against judgments, irrespective of any issue of inattention or neglect, when the circumstances under which the judgment is rendered show the deprivation of legal rights of the litigant who seeks relief, and when the enforcement of the judgment would be unconscientious and inequitable. Our courts will follow the general principles of equity jurisprudence applied by the equity courts of the other states of this country in actions of this character. Lazarus v. McGuirk, 42 La.Ann. 194, 200, 8 So. 253; City of New Orleans v. LeBourgeois, 50 La.Ann. 591, 592, 23 So. 542.
Courts of equity will not permit one party to take advantage of and enjoy the gains of ignorance or mistake of law by the other, which he knew of and did not correct, especially when a confidential or fiduciary relation exists between them. Pomeroy, Equity Juris, volume 2, pars. 847, 848, 849, 956.”
The petition for annulment of the judgment of final accounting, and the judgment of possession, alleges nine instances of possible irregularities in the accounting filed by the executor, William Skye. Mrs. May-cock has not had an opportunity to prove these allegations because of the trial court’s holding that the judgment of final accounting was res judicata. Simply stated, Mrs. Maycock has not had her “day in court”. Under the jurisprudential observations quoted above, we feel that she has been the victim of an ill practice. It was the executor who requested of Mrs. Maycock’s original attorney, Charles Yeager, that Yeager refrain from filing an opposition to the final accounting until such time as Yeager and the executor could discuss possible negotiations of the matter.
Equity cries out that we reverse and set aside the judgment of final accounting, and the judgment of possession involved in this matter, and remand the entire matter to the district court for further proceedings in accordance with the views herein expressed. As was stated in the concurring opinion in Southern Builders, Inc. v. Carla Charcoal, Inc., 357 So.2d 638 (La.App. 3 Cir. 1978), quoting from Justice Frankfurter in Offutt v. United States, 348 U.S. 11, 14, 75 S.Ct. 11, 13, 99 L.Ed. 11 (1954):
“ ‘Justice must satisfy the appearance of justice.’ ”
In passing, we mention the provisions of Code of Civil Procedure Article 3191 which state that a succession representative holds a fiduciary capacity to marshal all of the assets of the succession, and make proper distribution thereof, etc. If in truth and in fact Mrs. Maycock’s claims are correct concerning the several substantial items which were not included in the succession of Ethel Skye, and she can prove the other irregularities mentioned in her petition for annulment, then certainly it would appear that the succession representative may have violated his duties as a fiduciary of the Ethel Skye succession. In our view, the entire succession of Ethel Skye should be reopened.
All final judgments previously signed in this matter, in particular, but not limited to, the March 8, 1976 judgment homologating the executor’s final account, and the judgment of possession of the same date are vacated and set aside.
All costs of these proceedings, both in the trial court and on appeal are assessed against the mass of the Succession of Ethel R. Skye.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

. Cf. Succession of Donellan, 262 So.2d 526 (La.App. 4 Cir. 1972); Johnston v. Smith, 284 So.2d 149 (La.App. 2 Cir. 1973); Succession of Gilmore, 157 La. 130, 102 So. 94 (1924); Spitzkeit v. Robinson, 289 So.2d 846 (La.App. 4 Cir. 1974).